UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEITH  L. WANDELL,

     Plaintiff,

v.                                                                    Case No. 8:23-cv-2446-TPB-CPT

DEPUTY CASBARRO,

     Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Keith L. Wandell, proceeding *pro se*, sues Deputy Robert Casbarro in his individual capacity under 42 U.S.C. § 1983 for federal civil rights violations that occurred while Wandell was a detainee at the Manatee County Jail.[1] He proceeds on his Second Amended Complaint. (Doc. 32) He alleges that on June 22, 2023, Casbarro violated his Fourteenth Amendment rights by utilizing excessive force against him while escorting him through the jail.

Before the Court are cross motions for summary judgment. For the reasons explained herein, Casbarro is entitled to judgment as a matter of law on Wandell's excessive force claim.

---

[1] Wandell remains in custody at the Manatee County Jail and awaits trial in *State v. Wandell*, No. 2019-CF-2149 (Fla. 12th Jud. Cir.). *See* Manatee County Sheriff's Office Arrest Inquiries at https://www.manateesheriff.com/arrest_inquiries/ (last accessed May 29, 2026).

## I.     Background

On July 9, 2019, Wandell was arrested pursuant to a warrant and transported to the Manatee County jail on suspicion of lewd and lascivious molestation of a minor. (Doc. 53-1 at 14, *Wandell's deposition*) Because of the nature of the charges pending against Wandell, he was placed in protective custody. (Doc. 53-2 at 2, *Casbarro's affidavit*) Pursuant to the Sheriff's policies, inmates that are in protective custody are required to be restrained with both leg shackles and handcuffs whenever they are outside of their assigned dorms.[2] (*Id.*)

On June 22, 2023, Casbarro was informed that Wandell needed to be escorted from his dorm to the intake and release section of the jail so he could be transported to court. (Doc. 53-2 at 2) After retrieving Wandell from the dorm, Casbarro applied leg shackles and handcuffs to Wandell. (*Id.*) He then escorted Wandell and another inmate to the intake and release area. (Doc. 53-1 at 23; Doc. 53-2 at 2)

---

[2] This fact is established by Casbarro's affidavit. (Doc. 53-2 at 2) In his response to Casbarro's summary judgment motion, Wandell states that "Defendant by choice and not because of any existing or written policy that requires inmates in 'G' dorms to wear hand or leg restraints for common escorts in secure areas of the jail, applied hand and leg restraints on the Plaintiff for the escort." (Doc. 55 at 1) However, assertions in Wandell's unsworn response alone are insufficient to create a factual dispute regarding the Sheriff's policy. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record[.]"

Wandell's case against Casbarro is premised on three actions allegedly taken by Casbarro while escorting Wandell through the jail. (Doc. 53-1 at 7) Wandell alleges that (1) Casbarro applied his leg shackles too loosely causing injury to his ankles (*id*. at 7); (2) Casbarro repeatedly shoved Wandell (*id*.); and (3) Casbarro once slapped Wandell in the back of the head (*id*.).

Wandell brought this lawsuit against Casbarro because wants "to see [Casbarro] punished." (*Id*. at 50) Wandell seeks to recover $6.00 in compensatory damages, which represents the cost to replace two pairs of socks that were soiled by his ankle injuries. (Doc. 32 at 5; Doc. 53-1 at 51) He also seeks to recover $199,994.00 in punitive damages to punish Casbarro for shoving and slapping him. (Doc. 32 at 5; Doc. 53-1 at 51–52)

## II.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is only defeated by the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

A moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co*., 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence

3

of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005), *abrogated in part by Pulsifer v. United States*, 601 U.S. 124 (2024). The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "'Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.'" *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

## III.   Analysis

### A.     Casbarro's Motion for Summary Judgment[3]

Wandell's claims are based on three actions allegedly taken by Casbarro that constituted excessive force: (1) that Casbarro improperly applied leg shackles, causing injury to his ankles; (2) that Casbarro shoved Wandell while escorting him to a transportation vehicle; and (3) that Casbarro slapped Wandell in the back of the head after Wandell returned from court. In his motion for summary judgment, Casbarro acknowledges that a factual dispute exists regarding those allegations and does not seek summary judgment challenging the veracity of Wandell's allegations. (Doc. 53 at 1–2) Rather, Casbarro moves for summary judgment on the grounds that, accepting Wandell's version of the events as true, *i.e.*, that Casbarro applied Wandell's leg shackles too loosely and shoved and slapped Wandell, Casbarro is nevertheless entitled to qualified immunity because the law was not clearly established that his alleged actions arose to the level of a constitutional violation. (*Id.*)

---

[3] Casbarro filed a motion for summary judgment (Doc. 53), Wandell filed a response (Doc. 55), and Casbarro filed a reply (Doc. 56). Next, Wandell filed an unauthorized "Response to Defendant's Reply in Support of Defendant's Motion for Summary Judgment." (Doc. 57) Casbarro moves to strike Wandell's unauthorized sur-reply. (Doc. 58) Wandell did not respond to the motion to strike. Because the Court does not permit two opportunities to oppose the same motion, Casbarro's motion to strike Wandell's unauthorized sur-reply is **GRANTED**. *See* Local Rule 3.01, M.D. Fla., and the Clerk is directed to **STRIKE** Wandell's filing at docket 57.

"Qualified immunity offers complete protection for individual public officials performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012).  To receive qualified immunity, an official must first "establish that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred." *Robinson v. Sauls*, 46 F.4th 1332, 1340 (11th Cir. 2022).  Once this showing is made, the burden shifts to the plaintiff to show that (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation.  *Id.* at 1340–41.

Wandell alleges that "while working for the Manatee County Sheriff's Office . . . Casbarro . . . during a routine escort . . . intentionally applied [leg restraints] incorrectly . . . and battered plaintiff by pushing and shoving [him] to make [him] walk faster  . . . and . . . slapped[him] in the head." (Doc. 32 at 4–5) The parties do not dispute that Casbarro was acting within his discretionary authority as a corrections officer when he allegedly applied force while escorting Wandell through the jail. Therefore, the burden shifts to Wandell to show that qualified immunity is inappropriate. *See Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018).

"[O]nly decisions of the United States Supreme Court, [the Eleventh Circuit Court of Appeals], or the highest court in a state can 'clearly establish'

6

the law." *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021) (quoting *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018)). "Because only clearly established law gives an officer fair notice that [his] conduct was unlawful, . . . the contours of the constitutional right at issue 'must be sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right.'" *Crocker*, 995 F.3d at 1240 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739).

"[A] right can be clearly established in one of three ways." *Id.* Wandell must point to either "(1) case law with indistinguishable facts, (2) a broad statement of principle within the Constitution, statute, or case law, or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Crocker*, 995 F.3d at 1240 (citations and quotations omitted).

As a pretrial detainee, Wandell's excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 391 (2015). "To establish a claim for excessive force in the Fourteenth Amendment context, 'a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.'" *Ireland v. Prummell*, 53 F.4th 1274, 1297 (11th Cir. 2022) (quoting *Kingsley*, 576 U.S. at 396–97). Considerations bearing on the reasonableness or unreasonableness of force include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury;

7

any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397. A court "must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

As a preliminary matter, Casbarro argues that Wandell cannot prevail by simply showing that Casbarro harbored an express intent to punish him. (Doc. 53 at 8–9) The Court agrees. "[A]n express intent to punish alone, coupled with an objectively reasonable use of force, can[not] sustain an excessive-force claim." *Crocker*, 995 F.3d at 1249 and n.15 (explaining that the circuit court has not "read *Kingsley* to preserve (or create) the possibility of an excessive-force violation, even in circumstances where the use of force is objectively reasonable, on the ground that some sinister purpose is allegedly afoot") (citations and alterations omitted). Wandell must show more than Casbarro's intent to punish him by applying excessive force. He must show that force applied was objectively unreasonable. "The appropriate standard for a pretrial

detainee's excessive force claim is solely an objective one." *Kingsley*, 576 U.S. at 397.

### 1.   Leg shackles

For purposes of ruling on Casbarro's summary judgment motion, the Court believes Wandell's version of the events and views these additional facts in the light most favorable to him, *see Stephens v. DeGiovanni*, 852 F.3d 1298, 1315 (11th Cir. 2017) (explaining that, when considering a summary judgment motion, a court must "reconstruct the events in the light most favorable to the non-moving party and determine whether the officer's use of force was excessive under those circumstances"):

Upon return to the jail, although Wandell complained about his leg shackles to Casbarro, Casbarro "reattached the shackles again in an extremely loose [manner] or in the largest setting possible." (Doc. 53-1 at 25 and 32) Wandell's ankles were bleeding "too much" and "all the way to [his] feet[.]" (Doc. 53-1 at 26 and 30)

Wandell first sought medical treatment for his ankles "[a]t the very next med pass," which was later that evening. (*Id*. at 38) A nurse looked at Wandell's ankles, noted that Wandell had blisters from the shackles, and gave him bandages and a bottle of antibiotic ointment. (*Id*. at 39–40; Doc. 55-1 at 10) Wandell himself applied the bandages to his ankles. (Doc. 53-1 at 50) For fourteen days, Wandell received fresh bandages from several

different nurses. (*Id*. at 40; Doc. 55-1 at 8) It took about ten weeks for Wandell's blisters to completely heal. (Doc. 53-1 at 41)

In his summary judgment motion and reply, Casbarro argues that the minor injuries to Wandell's ankles, which healed without the treatment of a physician, are insufficient as a matter of law to support an excessive force claim. (Doc. 53 at 9–10; Doc. 56 at 3–5) Wandell responds that, regardless of whether the shackles were applied too loosely or too tightly, his injuries were "far greater than minimal and required daily treatments and bandage changes for more than two weeks." (Doc. 55 at 4)

Casbarro is entitled to qualified immunity on Wandell's claim that his improper application of leg shackles constituted excessive force. Wandell fails to point to any law which permits an excessive force claim based on restraints that were applied improperly and did not result in a severe or permanent injury. In fact, the law is clearly established for the opposition proposition: that the application of restraints will not support an excessive force claim absent a showing of a severe and permanent injury. *See Stephens*, 852 F.3d at 1326 n.30 (no excessive force claim arising from officer leaving plaintiff "handcuffed for almost three hours in handcuffs that were too tight" which caused "headaches, backpain, and loss of sensation in his right hand"); *Nolin v. Isbell*, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) (granting qualified immunity to officer based

on allegations of improper application of restraints when plaintiff had only "minor bruising that quickly disappeared without treatment").

Viewing the evidence in the light most favorable to Wandell, the loosely-applied shackles caused blisters to develop on his ankles, which bled "too much" and "all the way to [his] feet[.]" (Doc. 53-1 at 26 and 30) Wandell sought and received medical attention from nurses in the form of bandages and ointment that he applied to his own ankles. His ankles required bandages for two weeks and did not completely heal for ten weeks. Nevertheless, Wandell's injuries are simply insufficient to show that the application of force was objectively unreasonable. "[O]nly the most exceptional cases will permit an excessive force claim on the basis of handcuffing alone." *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2009) (collecting cases). Indeed, "[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir. 2002) (citing cases). The non-permanent injuries to Wandell's ankles, which did not require treatment from a physician but rather the self-application of bandages and ointment, cannot support an excessive force claim. *See Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (granting qualified immunity when officers applied handcuffs "too tightly" for twenty minutes because he "suffered only skin abrasions for which [the plaintiff] did not seek medical treatment").

Wandell has not come forward with materially similar cases that precede the events of June 22, 2023, that stand for the proposition that Casbarro's actions were unlawful. *See Ensley v. Soper*, 142 F.3d 1402, 1406 (11th Cir. 1998) ("Any case law that a plaintiff relies upon to show that a government official has violated a clearly established right must pre-date the officer's alleged improper conduct, involve materially similar facts, and truly compel the conclusion that the plaintiff had a right under federal law.") Accordingly, Casbarro is entitled to qualified immunity on Wandell's claim that his application of leg shackles constituted excessive force.

### 2.      Shoving and slapping

For purposes of ruling on Casbarro's summary judgment motion, the Court again believes Wandell's version of the events and views these additional facts in the most favorable to him:

While escorting Wandell from his dorm, Casbarro shoved Wandell seven or eight times. (Doc. 53-1 at 36) Each time he shoved Wandell, Casbarro uttered a derogatory comment, including "keep moving, speed up, walk faster, you piece of shit, you faggot, you chomo."[4] (*Id*. at 36) Casbarro's shoving of

---

[4] Wandell argues that Casbarro's comments amount to verbal and sexual harassment, sexual discrimination, and hate speech. (Doc. 55 at 5) To the extent Wandell attempts to argue that Casbarro's comments amount to a constitutional violation, such claim fails. As the Court explained in its earlier screening order, "threatening, demeaning, or abusive comments do not rise to the level of a constitutional violation." (Doc. 8 at 5, dismissing any claim against Casbarro based upon unprofessional conduct and verbal abuse)

Wandell did not cause him to fall to the ground, and it did not cause him injuries. (*Id.* at 37)

Later, after he returned from court, Casbarro slapped Wandell's head one time with an open palm. (*Id.* at 38) While slapping him on the head, Casbarro taunted Wandell by saying three or four times, "I will put my hands on you." (*Id.* at 37) Casbarro's slapping of Wandell's head was painful but it did not cause any injuries. (*Id.*)

In his summary judgment motion and reply, Casbarro argues that his conduct of shoving and slapping Wandell, while improper and unprofessional, amounts to de minimis force and does not implicate the protections of the Constitution, especially because the use of force did not cause any injury. (Doc. 53 at 11; Doc. 56 at 3–5) In response, Wandell argues that Casbarro rendered him "completely defenseless by mechanical restraint, verbally harass[ing] him and physically batter[ing] him causing lasting physical and mental injury . . . for sadistic gratification and a means to punish him." (Doc. 55 at 5)

Casbarro is entitled to qualified immunity on Wandell's claim that his conduct of shoving and slapping Wandell constituted excessive force. "[T]his Circuit has established the principle that the application of de minimis force, without more, will not support a claim for excessive force[.]" *Nolin*, 207 F.3d at 1257. "This is because the right to [restrain a detainee] necessarily carries with it the right to use some degree of physical coercion or threat thereof, and the

typical [restraint] involves some force and injury." *Sebastian*, 918 F.3d at 1308 (quotations omitted). "In the Fourteenth Amendment context[,] . . . [t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Crocker*, 995 F.3d at 1251 (quotation omitted). "[The] *de minimis* principle reflects the reality that not everything that stinks violates the Constitution." *Id.* (quotations and alterations omitted).

Viewing the evidence in the light most favorable to Wandell, Casbarro shoved Wandell seven or eight times and once slapped him in the back of the head, all while he was restrained with shackles and handcuffs. However, the circuit court has recognized that such use of force is de minimis and does not violate the Constitution. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (ruling that although pushing a handcuffed plaintiff against a wall "might . . . be[] unnecessary," it is not "plainly unlawful"); *McCall v. Crosthwait*, 336 F. App'x 871, 873 (11th Cir. 2009) (affirming district court's finding that officer's use of force was de minimis and failed to establish constitutional violation when officer pushed detainee out of jail's elevator, causing him to hit the steel cell door and fall against window, resulting in bruising and treated with a prescription for ibuprofen); *Johnson v. Moody*, 206 F. App'x 880, 885 (11th Cir. 2006) (finding force was de minimis when officer intentionally kicked metal door on plaintiff's hand, necessitating a tetanus shot, bandages, and non-prescription pain relievers); *Nolin*, 207 F.3d at 1255

(finding force was de minimis where officer grabbed and shoved plaintiff against vehicle and kneed him in the back causing bruises to forehead, chest, and wrists). Finally, the undisputed fact that Wandell suffered no injuries from Casbarro's shoving and slapping him further supports the determination that the application of force was de minimis. *See Crocker*, 995 F.3d at 1251 ("[I]t seems most important there was very little force used and essentially no harm done.").

Again, because Wandell has not come forward with materially similar cases that precede the events of June 22, 2023, which stand for the proposition that Casbarro's actions in shoving and slapping him were unlawful, Casbarro is entitled to qualified immunity.

### B.    Wandell's Motion for Summary Judgment

Wandell separately files a motion for summary judgment and argues that he "can produce and disclose admissible evidence to support and corroborate every allegation in the complaint." (Doc. 46 at 3) Casbarro responds that Wandell's summary judgment motion must be denied because he fails to cite to any evidentiary materials in the record. (Doc. 51 at 2) Wandell replies that Casbarro and his counsel are in possession of evidentiary materials

that support his claims, including his initial grievance and supervisors' responses to the grievances.[5] (Doc. 52 at 7)

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of [the record], which it believes demonstrates the absence of a genuine [dispute.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The moving party's burden on a motion for summary judgment "depend[s] on whether the legal issues . . . are ones on which the movant or the non-movant would bear the burden of proof at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). "[F]or issues on which the movant would bear the burden of proof at trial, that party must show *affirmatively* the absence of a genuine [dispute] of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* (emphasis in original) (quotation omitted). "If the party moving for summary judgment fails to discharge the initial burden then

---

[5] Wandell suggests the existence of a video recording of the incident or incidents. (Doc. 52 at 1) However, the evidentiary record contains no such video recording.

16

the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Id.* at 1116.

Wandell's brief and conclusory summary judgment motion is not supported by references to record evidence. Instead, it primarily consists of a restatement of his legal claims and citations to caselaw, much of which is inapplicable to the issues presented in this case. In his reply, Wandell attempts to bolster his summary judgment motion by promising that he can, at some point in the future, produce admissible evidence to support his claims.

Wandell's motion is not supported by references to credible evidence that would entitle him to a directed verdict on his excessive force claim if not controverted at trial. Therefore, because he fails to discharge his initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute, his summary judgment motion must be denied.

## IV. Conclusion

Accordingly, for the reasons explained herein, is it **ORDERED** that:

1. Casbarro's Motion for Summary Judgment (Doc. 53) is **GRANTED**, and Wandell's Motion for Summary Judgment (Doc. 46) is **DENIED**.

2. Casbarro's Motion to Strike Wandell's Unauthorized Summary Judgment Sur-Reply is **GRANTED**. The Clerk is directed to **STRIKE** the docket entry at 57 as an unauthorized sur-reply. *See* Local Rule 3.01, M.D. Fla.

3.     The Clerk is directed to enter judgment in favor of Casbarro and against Wandell, to terminate any pending motions and deadlines, and to **CLOSE** this case.

DONE and ORDERED in Chambers in Tampa, Florida, this 3rd day of June, 2026.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**